**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at COVINGTON**

**CIVIL ACTION NO. 06-154-DLB**

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

vs.                        **MEMORANDUM OPINION AND ORDER**

**REAL PROPERTY KNOWN AS 1430-1436**
**MADISON AVENUE, COVINGTON, KENTUCKY,**
**WITH ALL APPURTENANCES AND IMPROVEMENTS**
**THEREON, IN THE NAME OF JAMAL, INC.,**
**AND $7,417.33 IN UNITED STATES CURRENCY**                              **DEFENDANTS**

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the court on Plaintiff's motion for summary judgment (Doc. #21). Claimants have filed a response in opposition to this motion (Doc. #25). For the reasons that follow, the motion is hereby **granted in part and denied in part**.

**I.      Introduction**

This is a civil forfeiture action brought under 21 U.S.C. § 881(a)(6) & (7). Jurisdiction is based on 28 U.S.C. §§ 1345 and 1355.

This is a civil action *in rem.* Plaintiff is the United States, which has filed a civil forfeiture action against defendant real property, known as 1430-1436 Madison Avenue, Covington, Kentucky, with all appurtenances and improvements thereon in the name of Jamal, Inc., and $7,417.33 in United States currency. Jamal Ayyoub has filed a claim to the currency. Intesar Ibrahim has filed a claim to the real property.

1

**II.    Background**

On March 10, 2005, Kentucky Department of Alcoholic Beverage Control (KABC) conducted a search at J-One Market in the course of investigating a complaint. Several small baggies of marijuana, 5.491 grams of cocaine, fourteen prescription bottles with the labels completely or partially removed, several plastic bags containing a total of 1,053 pills (Schedule II, III, and IV controlled substances), scales, crack pipes, rolling papers, and "Chore Boy" scouring pads were found in the office behind the check-out area. A safe bolted to the office floor contained $6,097.00 in cash, two large bags of marijuana, checkbooks, and several cashed payroll checks. The KABC also seized $1,004.61 from the cash register and approximately $315.00 from a Sentry lock box. The subject currency was seized "based upon probable cause that it was proceeds of drug trafficking or was intended to be used to facilitate drug trafficking." (Doc. #21-2 at 2).

Jamal Ayyoub, the sole shareholder of Jamal, Inc., which was the owner of defendant property, operated J-One Market. As a result of the investigation, Ayyoub was arrested and charged in Kenton Circuit Court with trafficking in controlled substances (cocaine, marijuana, and unspecified drugs) and possession of drug paraphernalia. Ultimately, he pled guilty to the drug trafficking charge.

The United States filed a civil forfeiture action against defendant real property and currency on August 1, 2006, "alleging that both facilitated or were proceeds of drug trafficking." (Doc. #21-2 at 3). Claimants Ayyoub and Ibrahim filed claims and answers. Ayyoub has responded to discovery requests, but Ibrahim has not. According to claimants' counsel, she cannot be reached and is outside the country.

2

### III. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

Once the movant has met its initial burden of establishing that summary judgment may be appropriate as a matter of law, the non-movant cannot rest on its pleadings but must instead demonstrate that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, it must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 341 (6th Cir. 2006). If a reasonable jury could not return a verdict for the nonmoving party based on the evidence construed in its favor, summary judgment should be granted to movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

**IV.     Analysis**

**A.     Applicable Law/Burden of Proof**

The Civil Asset Forfeiture Reform Act (CAFRA), Pub. L. No. 106-185, 114 Stat. 202, 18 U.S.C. § 983 (2000), provides the applicable burden of proof in this civil forfeiture action. *See United States v. Real Property in Section 9, Otsego County,* 241 F.3d 796 (6th Cir. 2001). Pursuant to CAFRA, the United States has the initial burden to show that the at-issue property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1).[1] To the extent the United States alleges the property is subject to forfeiture under a facilitation theory, "the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).[2] If the United States sustains its burden, then the claimant must prove by a preponderance of the evidence that he or she is an innocent owner. 18 U.S.C. § 983(d)(1).

---

[1] In describing this burden, the Supreme Court has provided:
The burden of showing something by a "preponderance of the evidence," the most common standard in the civil law, "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'"
*Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371-72 (1970) (Harlan, J., concurring) (brackets in original) (internal citation omitted)).

[2] In *United States v. $99,990 in U.S. Currency*, 69 Fed. Appx. 757, 762-63 (6th Cir. 2003), the Sixth Circuit stated that while "probable cause" was the standard prior to CAFRA, "preponderance of the evidence" is the burden of proof for establishing the existence of a substantial connection.

4

**B.     Real Property**

**1.     Facilitation of Illegal Activity**

The government argues that seized real property is forfeitable because it was used to store controlled substances, facilitating drug trafficking. 21 U.S.C. § 881(a)(7) provides for the forfeiture of:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

Section 881(a)(7) supports the facilitation theory of forfeiture. *United States v. Real Property in Section 9, Otsego County,* 308 F. Supp. 2d 791, 806 (E.D. Mich. 2004).

Proceeding under a facilitation theory, the United States argues that the real property "was used to store controlled substances which were possessed for the purpose of drug trafficking." (Doc. #21-2 at 6). In support of this argument, the government cites the controlled substances found during the investigation of the premises. During the KABC search of J-One Market, investigators located several small baggies of marijuana, 5.491 grams of cocaine, fourteen prescription bottles with the labels completely or partially removed, several plastic bags containing a total of 1,053 pills (Schedule II, III, and IV controlled substances), scales, crack pipes, rolling papers, and "Chore Boy" scouring pads. These items were found in the office behind the check-out area. Additionally, a safe bolted to the office floor contained $6,097.00 in cash, two large bags of marijuana, checkbooks, and several cashed payroll checks.

Claimants argue that "it cannot accurately be said that the real property was *used to store* the controlled substances in question to a degree that use of the premises rose to the level of *facilitation*." (Doc. #25-1 at 4 (emphasis in original)). Rather, according to the claimants, "[i]t can only be said that the controlled substances were found on the premises." (*Id.*) As the claimants see the situation, the relationship between the drugs and the real property was merely "incidental," as opposed to "facilitative." (*Id.*) Claimants cite no case law to support this "degrees of storage" theory. Moreover, claimants do not explain how the presence of drugs within the store does not amount to storage. Certainly, storing drugs in a building housing a legitimate business enterprise facilitates drug trafficking. At the very least, this arrangement provides a more discrete location to sell drugs, and, even if one rejects the idea that drugs were sold out of the store, it provides a secure area for a dealer to conceal his or her inventory.[3]

Claimants' argument that "there is no evidence in the underlying criminal case of any connection between the real property and any sale of drugs" directly contradicts Ayyoub's guilty plea to drug trafficking, which arose out of the discovery of controlled substances on defendant real property. (Doc. #25-1 at 4). While claimants note that the "arresting authorities never conducted a single controlled buy nor obtained any witness testimony as to the sale of drugs," (Doc. #25-1 at 4-5), these statements ignore both Ayyoub's guilty plea and the discovery responses he provided to the government. (Doc. #21-4). In one such

---

[3] The Eighth Circuit has provided that "[t]he term 'facilitate,' as used in the context of [21 U.S.C. § 881], has been interpreted to encompass activity making the prohibited conduct less difficult or 'more or less free from obstruction or hindrance.'" *United States v. Premises Known as 3639-2nd Street, N.E., Minneapolis, Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989) (internal citations omitted).

6

request for admission, Ayyoub states that he has testified that "he traded the illegal substances with several others in exchange for services." (*Id.* at 9-10).[4]

Despite their assertion that the drugs were not sold out of Ayyoub's store, claimants provide no alternative, plausible rationale for their presence. The sheer quantity of narcotics discovered on the premises precludes any argument that they were for personal use.[5] The presence of scales and other drug paraphernalia also supports the conclusion that the large quantity of drugs in question represented Ayyoub's stock in trade.[6] While not necessary for a determination that defendant real property facilitated the claimant's drug trafficking, the totality of the circumstances suggests that Ayyoub's store functioned as a front, or as a camouflage of a legitimate business enterprise, for his illicit venture. For all of these reasons, the government's motion for summary judgment with respect to the defendant real property is well taken and will be granted.

### 2. Claimant Ibrahim's Innocent Owner Defense

Claimant Intesar Ibrahim argues that seizure of defendant real property is improper because she is an innocent owner. CAFRA provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the

---

[4] While Ayyoub qualifies this admission with the caveat that he "never used the property itself as an aid in any trafficking operation," (Doc. #21-4 at 9-10), this memorandum has previously addressed claimants' unconvincing argument that storage of the drugs on the premises did not facilitate Ayyoub's drug trafficking.

[5] For example, over 1,000 pills were seized from Ayyoub's store.

[6] In *Real Property in Section 9, Otsego County*, 308 F. Supp. 2d at 807 (E.D. Mich. 2004), the court noted that the presence of a triple beam scale "supported the inference that drug transactions occurred there."

evidence." 18 U.S.C. §983(d)(1). Addressing situations where, as is the case here, the claimant's property interest arose after the occurrence of the criminal activity, CAFRA provides:

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

18 U.S.C. § 983(d)(3)(A).

In this case, Ibrahim has failed to show by a preponderance of the evidence that she is an innocent owner. Claimant's counsel has provided the Court with a deed indicating that Ibrahim purchased defendant real property and makes the conclusory statement that Ibrahim "is a bona fide purchaser for value of the premises with no knowledge of any nexus between the property and any illegal activity." (Doc. #25-1 at 5). However, regardless of whether Ibrahim is a bona fide purchaser for value, she has not satisfied the second "innocent owner" requirement under CAFRA, as she has offered nothing to prove that she "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(ii). David E. Gerner examined the property records of Kenton County, and his findings were presented in an affidavit. (Doc. #21-3 at 1). The records show that defendant real property was conveyed to Ibrahim more than three

months after the United States filed its Notice of Lis Pendens. (*Id*).[7] Thus, it was unreasonable for Ibrahim to believe defendant real property was not subject to forfeiture.

One final matter deserves brief comment. Claimants' counsel also argues that the fugitive disentitlement doctrine prohibits the Court from divesting Ibrahim of her interest in defendant real property. In support of this position, claimants cite *Degan v. United States*, 517 U.S. 820 (1996). In *Degan*, a civil forfeiture proceeding was brought seeking property used in connection with or purchased with proceeds of illegal drug transactions. The Supreme Court addressed the issue of "whether a United States District Court may strike the filings of a claimant in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution" and held that this was not a proper exercise of the District Court's inherent authority. *Id.* at 821. Claimants argue by way of analogy that, as Ibrahim is not a fugitive, "the Constitutional protections afforded the Claimant in *Degan* should be even more applicable in the instant case." (Doc. 25-1 at 6). *Degan*, however, can be easily distinguished, as a determination that forfeiture of defendant real property is proper does not violate Ibrahim's constitutional rights. In *Degan*, 517 U.S. at 826, the Supreme Court noted that the District Court had "resort[ed] to a rule forbidding all participation by the absent claimant." The District Court "held Degan was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution." *Id.* at 822. No such approach has been adopted in

---

[7] According to Affiant Gerner, on August 4, 2006, the United States "recorded in Book C3099, Page 261 of the Kenton County, Kentucky Records a Lis Pendens Notice referencing [defendant real property] and noticing that the property...is subject to forfeiture in a Federal Civil Action." (Doc. #21-3 at 1). Gerner further stated that, on November 21, 2006, "Jamal Inc. caused a certain deed to be recorded purporting to transfer [defendant real property] from Jamal Inc. to Intesar Ibrahim." (*Id.*)

9

this case. None of Ibrahim's filings have been struck, and the Court has allowed the claimant to be heard, providing every opportunity for her to participate in these proceedings. Forfeiture of defendant real property is not based on the exclusion of Ibrahim from this action.

### C.  Currency

#### 1.  Currency Discovered in Safe Bolted to the Office Floor

The government alleges that the seized currency is forfeitable as the proceeds of drug trafficking. 21 U.S.C. § 881(a)(6) provides for the forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

Section 881(a)(6) supports the "proceeds theory" of forfeiture. *Real Property in Section 9, Otsego County*, 308 F. Supp. 2d at 806.

In this case, it is undisputed that a large quantity of drugs was discovered in close proximity to the defendant currency. Over $6,000 in cash, two large bags of marijuana, checkbooks, and several cashed payroll checks were located in a safe bolted to the office floor. "The Courts of Appeals for the Second, Fourth, Ninth, and Eleventh Circuits have found that the most compelling case for forfeiture are those situations where law enforcement officers discover the property in close proximity to narcotics or drug paraphanelia." *United States v. $21,510 in U.S. Currency*, 292 F. Supp. 2d. 318, 322 (D.P.R. 2003) (citing *United States v. 3097 S.W. 11th Ave.*, 921 F.2d 1551, 1552 (11th Cir. 1991), *abrogated on other grounds*; *United States v. $95,945.18 in U.S. Currency*, 913 F.2d

1106, 1107 (4th Cir. 1990); *United States v. Padilla*, 888 F.2d 642, 644-45 (9th Cir. 1989); *United States v. $2,500 in U.S. Currency*, 689 F.2d 10, 12 (2d Cir. 1982)).  The storage of both cash and narcotics in the safe, the presence of more drugs and drug paraphernalia on the premises, and Ayyoub's drug trafficking conviction support the government's position that the currency represents proceeds of drug trafficking.  With the exception of Ayyoub's self-serving statement that the currency represents proceeds from the legitimate operation of his business and the affidavit of Cindy Sharon, (Doc. #25-3), Ayyoub has provided no evidence to suggest that this money represents anything other than proceeds from drug trafficking.

Therefore, with respect to the $6,097.00 in cash found in the safe bolted to the office floor, Ayyoub has failed to establish a genuine issue of material fact.  Furthermore, Ayyoub "has failed to establish a trialworthy issue because his assertions are based upon conclusory allegations, improbable inferences and unsupported speculation." *$21,510 in U.S. Currency*, 292 F. Supp. 2d at 322 (internal quotations and citations omitted).  Based on the above discussion, the Court concludes that Plaintiff has come forward with sufficient evidence of a nexus between claimant's drug trafficking and the $6,097.00 in currency seized from the safe bolted to the office floor.

### 2. Other Seized Currency

However, not all of the seized currency was found in such close proximity to controlled substances.  The $1,004.61 in currency found in the cash register and the $315.00 in currency found in the lock box, although suspicious due to the amount of drugs found elsewhere on the premises, were not stored alongside narcotics.  While these amounts of currency may very well represent proceeds from the sale of narcotics, " viewed

11

in the light most favorable to the claimant, the government has failed to support its claim past mere suspicion." *$21,510 in U.S. Currency*, 292 F. Supp. 2d at 322-23. The storage of just over $1,000 in currency in a cash register is consistent with legitimate business practices. Additionally, the relatively small amount of money found in the lock box does not raise more than a mere suspicion of connection to drug-related activity.[8] Besides the presence of drugs found elsewhere on the premises, the government has brought forth no evidence as to why this cash should be viewed as proceeds of drug trafficking. At the very least, a genuine issue of material fact exists as to the origins of this currency.

The government argues that Ayyoub is precluded from asserting a defense to forfeiture by the doctrine of collateral estoppel. (Doc. #21-2 at 8). The Sixth Circuit has set forth three requirements for the application of collateral estoppel. *United States v. Three Tracts of Property Located on Beaver Creek, Knott County, Kentucky*, 994 F.2d 287, 290 (6th Cir. 1993). It stated:

> First, the issue in the prior trial must have been identical. Second, the issue must actually have been litigated. Third, it must have been necessary and essential to the judgment on the merits. Conviction in a prior criminal trial, therefore, does not, *ipso facto*, collaterally estop claimants from contesting the forfeiture.

*Id.* at 290 (internal citations omitted). As to the seized currency, collateral estoppel is inapplicable. Since the issue of whether the at-issue currency represents the proceeds of

---

[8] The Sixth Circuit has adopted the approach of the Ninth Circuit that "[f]ifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity." *United States v. $5,000 in U.S. Currency*, 40 F.3d 846, 850 (6th Cir. 1994) (quoting *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994), *superseded by statute on other grounds*); *see also $99,990 in U.S. Currency*, 69 Fed. Appx. at 764 (6th Cir. 2003) (holding that $4,000 found in claimant's hotel room, considering the totality of the evidence surrounding the seizure of the currency, warranted no more than a suspicion of illegal activity).

It should be noted that, while the $6,097 of cash found in the safe bolted to the office floor does not approach the amount considered suspicious "standing alone," its close proximity to controlled substances provides evidence of its connection to drug trafficking.

drug trafficking was not litigated and was not necessary and essential to the judgment on the merits, the government's collateral estoppel argument fails. However, while collateral estoppel may be inapplicable, Ayyoub's conviction can still be considered as evidence tending to support the conclusion that currency seized represents the proceeds of drug trafficking.[9]

### V. Conclusion

For the reasons stated herein, **IT IS ORDERED THAT –**

(1) Plaintiff's motion for summary judgment (Doc. #21) be, and hereby is, **GRANTED** as to the real property and the $6,097.00 found in the safe bolted to the office floor.

(2) Plaintiff's motion for summary judgment (Doc. #21) be, and hereby is, **DENIED** as to the $1,004.61 in the cash register and $315.00 in the lock box.

(3) This case is scheduled for a Status Conference on **JANUARY, 11, 2008 AT 10:30 A.M.** to discuss future proceedings.

---

[9] In *$99,990 in U.S. Currency*, 69 Fed. Appx. at 763, the Sixth Circuit considered the claimant's prior conviction as being "probative of drug-related activity" and a component of the "totality of the circumstances" supporting the government's position that the property was subject to forfeiture.

This 21st day of December, 2007.



G:\DATA\Opinions\2-06-154-MadisonAve-MOO.wpd